All rise. This court is now in session. You may be seated. I'd like to call the next case. 3-15-0252 Teresa Reeder v. William Herman Appellants v. Andrew Cassidy v. Auto Owners Insurance Company, Appalachia, by Craig Unruh. Mr. Cassidy, you may proceed. May it please the court, counsel. My name is Drew Cassidy. I represent the appellants Terry Reeder and Todd Herman, who are two individuals who were injured when the motorcycle upon which they were riding was struck by a 2007 Pontiac Grand Prix automobile which had crossed the center line and which vehicle was insured by Auto Owners Insurance Company. The issue that brings us here is whether or not there's coverage under that policy. I'm aware that your honors have certainly read the briefs, but I would like to bullet point a couple of relevant pertinent provisions of the policy and the facts. The auto owner's policy is a comprehensive automobile policy with a named insured perfect choice LLC. The Grand Prix was owned by Angela and Lee Triplett. Angela is the principal of perfect choice. Neither of the triplets were named insured under the policy. The liability section of the policy provides coverage, and I paraphrase, that auto owners will pay for damages arising from ownership, maintenance, or use of your automobile. And your automobile is defined simply in the policy as the automobile described in the declarations. The Grand Prix was listed in the declarations of the policy. And that did not change at the time of the accident. In fact, the Grand Prix was not removed from the policy until two months after the accident when an endorsement was issued by auto owners for that very purpose. The facts of the case are straightforward. Friday evening, June 28th, a William LeVon purported to purchase this Grand Prix from the triplets. Two days later, on Sunday, June 30th, Mr. LeVon and a friend of his, a Mr. Burkhart, also named in this suit, decided to spend the day drinking at several local establishments. And about 6 p.m., decided to drive the car. There is a dispute between these parties as to which of them was driving in the underlying suit. In any event, they crossed the center line, causing these severe injuries to my clients. Auto owners denied coverage for the injury claims which resulted. And the basis of the denial was that the vehicle had been sold before the day of the accident by the triplets to LeVon. However, there's no language in the policy which conditions coverage for this Grand Prix upon ownership of the vehicle. Indeed, the only name insured in the policy, Perfect Choice, never owned the vehicle. Rather, the policy simply and straightforwardly provides coverage for the listed automobiles, which the Grand Prix was. Now, in the ensuing declaratory judgment action, the trial court ruled against us, found no coverage. It did so on three bases. Two of them were straight policy interpretation decisions. One was a legal basis. The policy interpretation findings by the court was, one, that coverage under this policy would be inconsistent with the language of the employer's non-ownership liability endorsement. Number two, the trial court found that section two, the general liability section of the policy, provides only for coverage, I should say, since there were no claims trying to fund liability against Perfect Choice. It found that there couldn't be coverage under the policy. The final basis for the trial court's decision was the legal determination that there was no insurable interest held by the name insured in the vehicle following the sale. Now, with the exception of its support for this latter finding, every one of auto owners' arguments that has been presented to this court is presented upon one of those two, what we believe to be erroneous policy interpretations. We'll start there. Number one, auto owners relies heavily upon the trial court's determination that the employer's non-ownership liability endorsement precludes coverage. In fact, auto owners go so far as to describe the primary policy to this court as an employer's non-owned liability policy. It is not. This is a comprehensive automobile policy. It provides liability coverage. It provides collision coverage. It provides UM coverage. It provides UIM coverage. It just so happens to have an endorsement called an employer's non-ownership liability endorsement. That endorsement does nothing but extend the liability coverage that's provided in the body of the policy under Section 2. Four, claims arising from the use of non-owned automobiles while being used by officers, partners of Perfect Choice and for a business purpose. The court's error appears to be based upon the fact simply that the Grand Prix was not owned. So it latched onto the name of this endorsement as a non-owned endorsement, and then it read the endorsement as a limitation of the liability coverage under Section 2, rather than, as it clearly states, being an extension of that coverage. We submit that this was error. Now, if we look at the endorsement, there are several things that make this very clear. Number one, it states, Section 2 liability coverage extends to, quote, end quote. It goes on to describe that it is being extended to a private passenger automobile. Well, a private passenger automobile is also defined in the policy. It's virtually any four-wheel passenger vehicle. That has to be contrasted with your automobile, which is the coverage, which is provided under Section 2, and which is defined differently. Of course, the law presumes that if different language is used in different parts of a policy, it was intentional, and it has a different meaning. So the your automobile is the Grand Prix. Third, there's an express exclusion to the endorsement for any automobile covered by any other provision of the policy. As we've just pointed out, the Grand Prix is covered as your automobile under Section 2 of the policy, so the endorsement doesn't even apply to it. And finally, there's another exclusion for autos owned by principals of the company, quoting executive officers and partners, but it's the principals of the company. Well, the Grand Prix is owned by the principals of the company. Therefore, there would be no coverage under the endorsement for the Grand Prix, and there doesn't need to be because the Grand Prix is already covered under the liability section of the policy set forth in Section 2. Therefore, it's clear that this is essentially a different coverage for different automobiles that is provided by the policy, and the court erred in reading as a limitation on that broad liability coverage. Now, the trial court's interpretation would limit all the liability coverage for this Grand Prix to officers and partners of perfect choice. That would eliminate the omnibus cause of the policy, contrary to the expressed wording of Section 2, and contrary to applicable Illinois law. And the policy simply cannot be construed to be violative of Illinois law. The same issue leads us into the trial court's second policy interpretation. There, the court found that the policy provides coverage only for damages which the policyholder, i.e., perfect choice, becomes legally responsible. Again, this is a policy interpretation which would render the omnibus clause a complete nullity. It would not cover anybody, and it could only be for claims which allege liability against perfect choice, irrespective of who was driving it. The language relied upon by the court comes directly from Section 2 of the policy, and I quote, We will pay damages for bodily injury and property damage for which you become legally responsible. You is defined as perfect choice. Because of or arising out of the ownership, maintenance, or use of your automobile. Because you is defined as the named insurer or the policyholder, the court determined that coverage under the policy would be provided only for claims against the policyholder. However, the very next sentence of that same paragraph of the policy status goes on to say, We will pay such damages, and then goes on to list four categories of the types of drivers that will be covered, clearly extending it beyond just the legal responsibility of perfect choice. So it's clear that the court read a single sentence in isolation and out of context of the entire coverage language. Now, Auto Owners has adopted the court's rationale by repeatedly arguing that there is no coverage here, because there's no way in which perfect choice can be legally responsible, and no claims have been made against perfect choice. Mind you, Auto Owners provides no analysis in their submissions to this court, as to the court's interpretation of this policy. It simply accepts it as a given, and then uses that as a premise for many of its arguments. Now, in addition to the selective reading of that coverage section, which I just covered, which we needed to arrive at that conclusion, this court would also have to accept that the very purpose of this policy is for no other purpose than to provide vicarious liability protection for the named insured. Clearly, not the purpose of liability insurance in Illinois. It's contrary to the express language of this policy, and would represent an absurd interpretation. By its very terms, the policy provides coverage for certain identified insureds, other than the name insured, irrespective of claim of liability against the named insured. In other words, it includes a standard omnibus clause which needs to be enforced. The final issue from the court was the insurable interest issue, and held that perfect choice no longer had an insurable interest once the vehicle had been sold. Again, it's important to keep in mind that perfect choice never owned the vehicle. It was owned by the triplets, it was sold by the triplets. Now, in coming to this conclusion, the trial court relied solely upon case law of other jurors. Can I ask a question based on your arguments? Sure. Was it an exclusion for vehicles owned by the triplets, by the principals? Was that an exclusion? That was an exclusion to the coverage under the employer's non-ownership liability endorsement. So, as I pointed out, that is a separate or extension of the liability coverage. The coverage for the vehicle is provided under the general provision in the body of the policy. So, the vehicle in question was not owned at the time of the accident by a principal? That is correct. It had been sold to a William LaVon on Friday evening. So, it is a named vehicle, not owned by the principals. So, the exclusion to the extension does not apply. Well, I guess technically that would be correct. So, where does that leave us? Help me. Well, I think the exclusion still doesn't apply because it excludes, or I'm sorry, the endorsement still doesn't apply because it excludes any vehicles for which coverage is provided in another portion of the policy. And the coverage is provided under Section 2 in the body of the policy, which defines your automobile as those listed in the declarations, which the Grand Prix still was. And your automobile is never tied to the ownership of a principal? Not any language in this policy whatsoever which mentions the terms actual or legal ownership. So, your argument is the policy itself is poorly drafted? My policy is that the... Okay. Thank you. Yes. And similar to the JADZEC case that was cited, Your Honor, in which the court very clearly stated had the insured wished for coverage to be dependent upon actual or legal ownership, it should have drafted the policy that way. It did not. It insured on an identified vehicle until it's removed from the policy the coverage exists. Or you terminate the policy once you sell the vehicle. That's correct. But that wasn't done. Okay. Go back to your argument. Thank you. On the insurable interest, the court relied solely on foreign case law and noted that there's a split of authority among the states as to whether or not insurable interest is required under a liability policy. Our position is that insurable interest is always required under a casualty policy, first-party property cases, but it is not required under a liability policy. And we agree with the trial court. There is a split of authority among other states. The court, however, went on to state its belief that there was no Illinois case law on point and then elected to follow the law of those states which require an insurable interest in the liability policies. We believe this was error on several fronts. First of all, many of the cases cited by the court have nothing to do with liability insurance policy, although we will concede that one of those cases cited out of Indiana is a liability policy, and the court did find an insurable interest was required. There's no explanation from the court as to why, if there was no Illinois case law. It chose those jurisdictions which require an insurable interest versus those that do not. But most importantly, the trial court was simply mistaken that there was no Illinois case law on point. In Midstates v. Brandon, the first district appellate court expressly held that the requirement for an insurable interest, which is required under a casualty policy, does not apply to liability policies. The facts of that case are virtually indistinguishable from this case. A father sold an insured vehicle to his son. The father was named insured. The son was not named under the policy in any fashion. Subsequently, the son was involved in an accident. The policy didn't require ownership for coverage. It simply listed the vehicle. The son sought coverage when he was sued, and Midstate denied it on the basis that it did not have an insurable interest. The court explained that by covering operation, maintenance, or use, it would cover the son, because use, as the court stated, is not limited to owners and or named insureds under the policy. It can be used by many people. Again, we go back to the omnibus clause of the policy. For that reason, it found coverage in that case, despite the fact that the vehicle had been sold. We submit that is the Illinois case all on point, and the trial court erred in not following it. That case has not been challenged since it was issued, I believe, in 1950. We would submit that the trial court was in error in each of the three bases for this. We would further submit that the policy says what it means and means what it says. It provides coverage for this Grand Prix. The fact that 48 hours may have passed before passage should not defeat the coverage, which is consistent with Illinois law. Again, we're talking about casualty versus liability policy. Illinois public policy is we don't want wagering contracts and people betting on the property of others. So you need to have an insurable interest. But the public policy of Illinois on liability policies is to protect the public and to allow them to recover for injuries they sustained. Under that policy, the insurable interest is not required, and there is no basis to apply any public policy to deny my clients the coverage that this policy provides for the significant injuries they sustained. We would ask that you reverse the trial court and enter judgment on behalf of my clients finding coverage under this policy. Thank you. Thank you, Mr. Kessley. Mr. Unrath. Good afternoon. My name is Craig Unrath. I represent auto owners insurance. Opposing counsel opened his argument by saying that on June 28, 2013, the LeBans purported to purchase the vehicle. In fact, they did purchase the vehicle. The full purchase price was paid, keys were turned over, title was signed over, and the title was sent to the Secretary of State. This was a done deal. But there's one other aspect to this. It's been many years since I've sold a car in a single-person transaction, but I sure wish I had done this when I did. They had the LeBans sign paper, and it says, Buyers acknowledge that they are in full responsibility of the vehicle. Logo and decal must be removed immediately. Buyers further acknowledge that they are responsible for obtaining insurance coverage on said vehicle immediately. Now, on a common sense level, I have to ask, do I need to even say anything else? The relationship between these parties, between Perfect Choice and its vehicle, between the triplets and the LeBans, any connection at all has come to an end. This case is resolved. This transaction is resolved. Now, this common sense argument of mine is actually embodied in the law. Is the insurance contract conditioned on ownership of the vehicle? In other words, any language in the contract that said the terms of this agreement terminate upon sale of the vehicle? There is no specific language that you suggest like that. However, the intent, and as I was about to say, the intent of the parties was to ensure this vehicle to be used by a 39-year-old, principally used for business duties by a 39-year-old operator. That was the intent of the parties. In construing an insurance policy, courts must ascertain the intent of the parties. Construing the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the contract. The purpose of this contract was to ensure Angela Triplett's primary use of the vehicle for Perfect Choice, a business of which she was sole owner. Was use tied to business purpose in the language of the contract? In the language of the contract, it's under the Omnibus Clause. It says that the auto owner's insurance will pay, provide coverage to Perfect Choice for any use of the vehicle for which it may become legally responsible. Now, in this particular case, if Angela Triplett had been driving the car on that Sunday evening. Regardless of who owned it? No, prior to the sale. If she had been driving this car prior to the sale, crossed the center line, and caused an accident, would she be held liable? Of course she would. Would Perfect Choice be held liable? What if she was running an errand, a grocery errand, that was unrelated to her business? Absolutely. She would still be held liable. And auto owners would be implicated because the insurer was to ensure her use of the 2007 Pontiac principally for business purposes. This is more than an implication. This is an acknowledgment that it will be used for other purposes besides business. Would she be held liable if she had done that? Certainly she would. Under that special scenario you gave me, fast forward four days later. The car is sold, but for some reason she's driving it. Same result. The car is sold, but Angela is driving it. In that case, she would only be driving, assuming she didn't steal the car. Right. She would be driving it with the permission of the Levons, and the Levons would be responsible for her conduct behind the wheel. What about this contract that would exclude any potential that auto insurance your client has to cover? If the sale, they don't own it anymore. The triplets don't own the car anymore. She's just driving it to the grocery store. She borrowed it from the people she sold it to. She would have borrowed it from the Levons. She would be driving it with their permission, and the Levons, assuming they had purchased insurance, their insurance coverage would cover for that under the Omnibus Clause. The two policies that would cover that or just theirs? Just theirs. Just theirs. I appreciate that. Look at the underlying case here. Did anyone sue Angela Triplett for this terrible accident? Is she named as a defendant? Is Perfect Choice named as a defendant? Of course not. Neither one of them are named in this case. And the reason is simple. There is absolutely no legal basis for bringing an action against Angela Triplett or Perfect Choice. She had nothing to do with this vehicle the moment it was sold. The key element here is we will pay damages for which you become legally responsible. And that's Perfect Choice. Can Perfect Choice be held responsible for a car that's been sold two days earlier? We submit that that's impossible. And that's borne out by the case in point. If it was possible, I guarantee you Angela Triplett, Perfect Choice would be named as defendants in the underlying suit. They are not. And the reason is because it would be a frivolous suit. There is no legal basis for holding either one of them legally responsible. It was also argued that perhaps the Omnibus Clause comes into play because Angela Triplett gave permission to the Levons to drive the car. Well, permission implies that you can withhold permission. Is it possible for Angela Triplett to tell the Levons after the car has been sold, sorry, you can't use that car today. I'm going to use it. Of course not. That's ridiculous. There was no mention of permissive use. Judge Wright, you had mentioned a provision in the non-owned employer's, oh, shoot, I'm chewing on my words. These cases are such. And you mentioned an exclusion. The extension language, which included an exclusion for vehicles owned by the principals, which is the triplet. Yeah. There we go. Thank you. Thank you for your assistance. I asked the question because it's confusing. Yeah. Yeah. And what you have here is you have an extension of coverage to private passenger, to vehicles that Perfect Choice does not own. That would seem to apply to the 2000 Grand Prix. It also applies only to the executive officers and partners. That would seem to appear to apply coverage in this case to Angela Triplett only. But then you pointed out subparagraph C. This coverage does not apply to your executive officers and partners for any automobile they own. So you have to wonder, does Angela Triplett have coverage under this? And I'd say that my response to that is this was a business car. This was used for business. It had the company logo on this. I believe that the intent of that exclusion is to cover her husband's car, the car that's used exclusively for private business. The car that doesn't have the company logo on it. That's my explanation for it. However, it's just as easily found coverage for Angela Triplett under the Omnibus Clause. Again, we go back to what if Angela Triplett had been driving this car and crossed the center line before it was sold? Would she be held legally responsible? If you're darn right, she would. And I don't understand why she wouldn't be responsible after the car was sold. I don't understand it from here. The reason is that after she sold the car, she couldn't be held responsible. There was no coverage for the LaVon's use of the car because Perfect Choice could not be held legally responsible, nor could Angela Triplett be held responsible. And they haven't been. They haven't been named as defendants. They couldn't be. There's no legal basis for a claim against them. So under the Omnibus Clause, Perfect Choice just cannot be found liable for this accident, vicariously or by any other means. And that's why the Omnibus Clause does not apply in this case. Now, it's essential to keep in mind that the only provision that the readers have identified in this case to provide them coverage is the Omnibus Clause. That's it. It's either provided under that provision or it's not. Now, we all know that Perfect Choice and Angela Triplett could not possibly be held liable for this horrible accident. Therefore, there is no coverage under the Omnibus Clause. Counsel also argued just moments ago and in his brief that somehow this violates public policy, and this is where we disagree. The Illinois Supreme Court has held that a violation of public policy will only be found where there is an explicit, a clear conflict with legislation. If you look at Section 3-112 of the Motor Vehicle Code, it states that once the sale is complete and in shorthand, once the title is signed over, the previous owner is not liable for any damages arising from the use of the vehicle. Now, I would submit that far from being contrary to public policy, that this application of the auto owner's policy is entirely in compliance with the public policy of Illinois. Are there no further questions? Question. Who handed the keys to the family that was driving the car at the time of the accident? Angela Triplett, I believe, negotiated the sale. She accepted money. It should make sure there was insurance on that vehicle before she turned it over to the other family. I'm not aware of any… They drafted a contract language that required it, but couldn't this have all been avoided? I'm assuming there was no other insurance policy. It was an uninsured vehicle as far as the new owners. So when the original owners, the Triplets, if I have their name right, handed the keys over, this all could have been avoided if they refused to do so until they knew either their policy had been terminated or the new owners had insurance, right? I disagree, Your Honor, respectfully. I believe that they satisfied whatever burden was upon them when they asked the Levons to sign the agreement that states we are fully responsible for the use of this vehicle from this point on. We agree to immediately obtain insurance. I don't believe there's any legal authority that would say that somehow Angela Triplett, and by extension Perfect Choice, somehow shirked their duty by failing to ensure or ensure that the vehicle was covered by policy. I'm just thinking about a recent case where Avis puts a car in somebody else's hands and that person says I have insurance. Avis, you don't have to cover me. So Avis hands over the keys and that person didn't have insurance. And so public policy does say it falls back on the leasing company that put the car into the pipeline, into the highway. So I'm just trying to understand the public policy argument. I think I understand it. I know you disagree with it, and I'm guessing you would disagree with public policy if I sort of recited it in a lessee situation. Offhand, I have no complaint with the holding or the example you give with Avis Rental, because this is their business. This is their business. They make their money doing this. This is certainly, I think that the courts might very well find that Avis would have a duty to ensure that there's some proof of insurance. But for Angela Triplett, for Perfect Choice? I understand the distinguishing factors. Thank you for pointing that out. There are no further questions. We ask you to affirm the trial court's order. Thank you. Mr. Cassidy? I want to follow up on the permission issue with Mr. Unrath referred to the bill of sale, which is a record in which it does state that the buyer is to get insurance. In fact, the bill of sale provides several conditions on the buyer to get insurance, to remove the details of Perfect Choice off the vehicle, to remove the license plates off the vehicle. The record also states none of that was done. So there were conditions that needed to be met. So we asked, could Angela Triplett have denied permission to take the vehicle? Yes, until all these conditions were met, but they chose not to do that. They handed the keys, said take the vehicle, with our permitting to take care of this stuff later. So there was some control that she simply failed to exercise it. Angela Triplett could have withheld permission to take the vehicle until Mr. LeVon provided proof of other coverage. But as a matter of public policy, you know, the statute requires the purchasers to have insurance. And is there any statutory requirement for a private sale for her to require them to have had the proof of insurance? Not that I'm aware of, Your Honor. But there's certainly a requirement in the contract, the bill of sale, which says he is to do this. That is a basis for her to say I'm not giving you permission to take the vehicle. Same with removal of the decals. This vehicle still had a big perfect choice decal on it when it hit my client. So she elected to not enforce those parts of the transaction and to allow them to take it and deal with it later. She could have withheld that permission. She could have canceled, had this vehicle removed from the auto owner's policy before she sold it. And we wouldn't be here today if that didn't happen. That is absolutely correct. They could have withheld permission, even after taking the money, to take the vehicle until they canceled or had it removed from the auto owner's policy after the sale. She did not do that. They handled this on a Friday night, and before anything was done with the auto owner's policy, which expressly provided coverage for this vehicle, this accident occurred. And auto owner's own conduct shows its belief that there was continuing coverage, that in August of that year it issued an endorsement for the purpose of removing this Grand Prix. Now why would it have to remove the endorsement two months later if it says it was by operation of law, coverage had been terminated. The other, I want to move on to the next point, refers to this legally responsible argument and tying into the omnibus clause. And Mr. Unrath refers to the omnibus clause as requiring legally responsible, and it's not technically correct. The coverage provision says that you must be legally responsible, but we will provide these benefits too. And then it lists all the other people. So it clearly cannot be read to be limited to only claim against perfect choice. And that's just a given. This goes back to them saying, well, the intent was to cover a 39-year-old female driver. Every policy that's issued, every auto policy, has an intent to cover the named insurer. In my case, I'm going to cover a 54-year-old married male man. But if I loan the car to Mr. Unrath, he's going to be covered. He can't come in and say, that wasn't the intent of the policy. The intent of the policy was only to cover Mr. Cassidy. That's the purpose of the omnibus clause. So you can't say this violates the intent because the intent is to cover the named insurer plus all these other characters that are identified under the law, residents of the household, relatives, permissive drivers, they are all covered. So that argument must fail. Who are the leavens under that, the laundry list of those individuals that do have coverage under this? I just don't see where they fit into, they aren't members of the household or relatives. And if they purchased it, I don't know how they can be permissive users. We believe they are permissive users. We believe that the policy contemplated that owners can be permissive users. If you didn't view the policy in that fashion, then Angela and Lee Triplett would not be covered. They are not the named insurer. The only way they could possibly be covered for the use of that vehicle is if they were permissive users under the vehicle. The policy has to be construed to provide coverage for the person who procured the insurance, the person who pays the premium on it, and the people who own the vehicle. So the argument that an owner can't be a permissive user, I believe is contrary to the circumstances under which this policy was issued. Thank you. I want to quickly turn to the exclusion again because it's come up several times in the endorsement. And Mr. Onrath argued that the purpose of the exclusion in the employer's non-ownership endorsement is to cover other vehicles. There's no language in the policy that suggests this, but it's to cover other vehicles like if Mr. Triplett had a vehicle. They don't want that. I would submit that the purpose is pretty clearly that, look, you're the principal of the company that's procuring the insurance. If you want a vehicle you own covered, then list it. List it in the declaration and pay the premium for it. We're not going to cover you under this because you own it and didn't bother to tell us about it. That's the purpose of that endorsement. In this case, they listed the Grand Prix. It's covered under the Section 2 coverage. I submit that the endorsement is entirely irrelevant. I finally would like to just simply clarify this public policy argument. I did not mean to come across that I was arguing that this policy is against public policy. Rather, my contention is that the distinction between the need for an insurable interest, between casualty insurance and liability insurance, is consistent with the differing public policies for casualty insurance and liability insurance. So with that clarification, if there are no questions, we would request reversal of the Triplett's decision. Thank you. Thank you, Mr. Cassidy. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now we will stand in a brief recess for comment.